J-A28017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NORTHGATE AT ALDEN PLACE COMMUNITY ASSOCIATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HARVEY TURNER | : | |
| | : | No. 464 MDA 2025 |
| Appellant | : | |

Appeal from the Order Entered March 27, 2025
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2024-CV-0508

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:       **FILED: MARCH 12, 2026**

Harvey Turner appeals from the order granting a preliminary injunction in favor of Northgate at Alden Place Community Association ("Northgate"). He argues that Northgate did not establish the elements necessary to obtain a preliminary injunction. He also challenges the scope of the injunction and Northgate's failure to post a bond. We affirm.

Northgate is an age 55-and-over retirement community located at 1002 Northgate Drive, Lebanon, Pennsylvania, 17042. Turner owns property at 1012 Alden Way, Lebanon, Pennsylvania. Northgate's and Turner's properties are subject to an easement agreement ("Easement Agreement"), which was executed by prior owners of the properties, on January 30, 2006. The Easement Agreement sets forth certain restrictions as to Turner's "use" of the property. It provides:

(b) The use of [Turner's] Property shall be restricted to only those uses currently permitted in the Planned Development Zoning District of Cornwall Borough, Lebanon County, Pennsylvania as are enumerated on Exhibit E hereof. Any use not enumerated on Exhibit E shall be deemed prohibited unless [Turner] obtains the written consent of [Northgate] to such use.

Easement Agreement at ¶5 B. Exhibit E lists the following permitted uses:

1. Single family detached dwellings

2. Single family semi-detached dwellings

3. Community Club

4. Community facilities such as police and fir[e] protection facilities, museums, libraries, etc.

5. Day care facility

6. Church or related uses

7. Municipal buildings

8. Nursery, kindergarten, elementary, middle or high schools

9. Institutions of higher education

10. Parks and Playgrounds

11. Golf courses, country clubs

12. Swimming, health/fitness and/or tennis clubs

13. Banks and other financial institutions, including drive-thru banking facilities

14. Business and professional offices

15. Personal service shops, including barbershops, beauty parlors, tailors, shoe repair, dry cleaning (excluding dry cleaning plants), self-service Laundromats, florists, etc.

16. Retail sales of goods and services – limited to sales areas not to exceed 3,000 sq. ft. in floor area

17. Sit down restaurants, tearooms, cafés, and other places serving food and drink, but not including drive-in, drive-thru or fast food restaurants

18. Bed and breakfast establishments

19. Employee/executive retreat and training centers

20. Home occupations and home businesses in accordance with the standards set forth in Section 2611 of the Cornwall Borough Zoning Ordinance

21. Family Day Care Homes, subject to the conditions listed in Section 2606 of the Cornwall Borough Zoning Ordinance

Easement Agreement, Exh. E.

Turner sought to use the historic Alden Mansion on his property as a wedding venue and received approval from the township. Turner did not seek permission from Northgate. Northgate filed the instant action seeking declaratory and injunctive relief. Northgate alleged that Turner was required to seek approval from Northgate before making any improvements to the easement. Northgate further alleged that since Exhibit E of the Easement Agreement did not enumerate "wedding venue" as a permitted use, Turner could not use his property as a wedding venue.

In November 2024, Northgate filed a motion for a preliminary injunction hearing. At a hearing on December 16, 2024, Northgate's president, Chester Bogar, testified that Northgate only became aware of Turner's intention to use the mansion as a wedding venue when the township gave Turner a permit. N.T., 12/16/24, at 12. Bogar stated that after receiving notice, Northgate had a meeting with its residents, and they unanimously voted to oppose the use of the mansion as a wedding venue. *Id.* at 13. Bogar explained that

Northgate's residents paid a premium to live in a 55-and-older community and chose to live there due to it being "quiet," there "wouldn't be much light infringing on our homes," and were promised "that there would never be anything built, any structure of any kind of road behind our houses." *Id.* at 13-14. Bogar pointed out that "wedding venue" is not one of the 21 permitted uses set forth on Exhibit E of the Easement Agreement. *Id.* at 14. He noted that the edge of the easement is approximately 14 feet from the last home in Northgate. *Id.* at 15. Bogar testified that Northgate's residents have several concerns if the property is used as a wedding venue including: late night traffic flow; headlights shining into homes; increased noise associated with weddings; increased street lighting; detrimental impact on the value of their properties; 25 to 100 vehicles arriving at the same time; inadequate parking on Turner's property; possible shuttle buses being used to shuttle wedding guests back and forth; and delivery trucks entering and exiting the easement. *Id.* at 16-19. Bogar said that it would be a breach of the residents' quiet, peace, and enjoyment if a wedding venue on the property was permitted. *Id.* at 16.

Turner testified that he purchased the property in December 2021. *Id.* at 29. At the time he purchased the property, the mansion was in disarray and "teetering on that it could have been torn down." *Id.* at 30. Turner stated that he has spent approximately $2 million on repairs to the mansion. *Id.* He presented a zoning permit from the township dated August 15, 2022. *Id.* at 33. The permit approved the use of the property as a "wedding venue, bed

and breakfast" and permitted him to get a wine and beer license. *Id.* On cross-examination, Turner conceded that he did not submit a formal plan to Northgate as to his intentions for the property. *Id.* at 48-49. He further agreed that "wedding venue" is not listed as a permitted use of the property in Exhibit E of the Easement Agreement. *Id.* at 51.

After the hearing, the trial court entered an order granting Northgate's request for injunctive relief. The order stated, "Turner is hereby enjoined from using the mansion property as a wedding venue, and in addition, Turner is enjoined from advertising the potential use of the mansion property as a wedding venue pending the resolution of the underlying [d]eclaratory [j]udgment [a]ction." Order, 3/27/25, at 1. The order further stated that Northgate "shall post bond in the amount of $5,000.00 with the Prothonotary of Lebanon County to be held in accordance with the conditions set forth at Pa.R.C.P. 1531(b)." *Id.* Turner filed the instant timely appeal.[1][2]

Turner raises the following issues:

---

[1] An order that grants an injunction is immediately appealable as of right. *See* Pa.R.A.P. 311(a)(4); *Ansell v. Charah Sols., Inc.*, 327 A.3d 626, 629 n.1 (Pa.Super. 2024).

[2] On April 16, 2025, Turner filed an Emergency Motion to Stay Preliminary Injunction Pending Appeal, or in the alternative, to Modify Preliminary Injunction in the trial court. Following a hearing on the motion, the trial court denied Turner's motion to stay but modified the bond amount from $5,000 to $15,000 and afforded Northgate more time to post the bond. Order, 4/24/25. Northgate did not post the original $5,000 bond but later posted the $15,000 bond within the deadline set forth in the court's April 24, 2025 order. Turner filed an appeal of the April 24, 2025 Order. That appeal is at No. 605 MDA 2025.

1. Did the trial court abuse its discretion by entering a preliminary injunction despite [Northgate's] failure to establish the six essential prerequisites to obtain a preliminary injunction?

2. Was the preliminary injunction a legal nullity where the trial court did not set a deadline for posting the bond and where [Northgate] failed to timely post the required bond?

Turner's Br. at 3.

Turner argues that Northgate failed to satisfy the six essential elements required to obtain a preliminary injunction. *Id.* at 16. He notes that Northgate does not dispute that, under Schedule E of the Easement Agreement, the property may be used for a variety of commercial purposes, including restaurants, coffee shops, community clubs, and churches, and Bogar acknowledged that weddings may be held in churches, restaurants, and private clubs. *Id.* at 12-13. Turner argues that Northgate failed to establish that its concerns about the property becoming a wedding venue "rose to the level of immediate and irreparable harm that could not be adequately compensated by damages." *Id.* at 21. Turner contends that "Northgate made no showing and offered no explanation as to why or how a wedding venue would cause immediate and irreparable harm while the other admittedly permissible uses would not." *Id.* at 28.

Turner further argues that the court failed to consider the substantial harm caused to him by the issuance of the preliminary injunction. He maintains that he has invested three years and $2 million on restoring the mansion and has obtained a permit for use of the property as a wedding venue

from the township. *Id.* at 10-11, 33. He argues he was also harmed because the preliminary injunction prevents him from advertising or accepting bookings for future weddings at the property. *Id.* at 33-34.

Turner further argues that "[t]he fact that 'wedding venue' is not enumerated on 'Exhibit E' to the Easement Agreement is far from dispositive, and thus, Northgate's right to relief is far from clear." *Id.* at 36. He points out that the plain language in the Easement Agreement "expressly recognized that [Turner's p]roperty will be accessed by 'tenants, guests, invitees,' and other 'occupiers' of the [p]roperty, and that such persons shall have 'free and uninterrupted access' thereto." *Id.* at 38-39. He highlights that many of the permitted uses under the Easement Agreement regularly serve as venues for weddings, including restaurants, bed and breakfasts, clubs, churches, or parks. *Id.* at 39.

Turner also argues that the preliminary injunction is overbroad and the trial court could have restricted, among other things, "the hours during which the [e]asement could be used to access the [p]roperty for weddings; enjoined the construction of streetlights on the [e]asement; ordered wedding guests not to park on Northgate's property; [or] limited the service of alcohol at weddings[.]" *Id.* at 41-42, 43.

We review an order granting a preliminary injunction for an abuse of discretion. *CKHS, Inc. v. Prospect Med. Holdings, Inc.*, 329 A.3d 1204, 1211 (Pa. 2025). At the preliminary injunction stage, our review is "highly deferential" to the trial court, as the law and evidence that will control the

outcome of the controversy are not yet discernable. *Id.* Therefore, we will not "inquire into the merits of the controversy," but limit our review to "examin[ing] the record to determine if there are any apparently reasonable grounds for the action of the court below." *Id.* (citation omitted). We will reverse only where it is evident that "no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied[.]" *Id.* (citation omitted). Our scope of review is plenary. *Id.* at 1211 n.2

"A preliminary injunction is a temporary remedy with the purpose to preserve the status quo as it exists or previously existed before the acts complained of, thereby preventing irreparable injury or gross injustice until the trial court can conduct further proceedings to resolve the underlying merits of the case." *Id.* at 1214-15 (internal quotation marks and citation omitted). The moving party bears the burden to establish six essential prerequisites:

> (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the preliminary injunction will not adversely affect the public interest.

*Id.* at 1209 (quoting *SEIU Healthcare Pa. v. Commonwealth*, 104 A.3d 495, 501 (Pa. 2014)).

Here, the trial court found that Northgate satisfied the six essential elements required to obtain a preliminary injunction. *See* Trial Court Opinion, filed 5/23/25, at 6. The court first found that an injunction was necessary to prevent immediate and irreparable harm that could not be compensated adequately by damages. It pointed to Bogar's testimony that Turner had indicated he had plans to make permanent alterations to the property, including possibly removing 100-year-old trees from the easement and installing streetlights and iron gates at the entrance. *Id.* at 7.

The court next found that greater injury would result from refusing the injunction than from granting it. It explained:

> In addition to the concerns with noise and lighting, Bogar described various other concerns with Turner proceeding with wedding venue services at this time: numerous vehicles attempting to enter the property at the same time[;] inadequate parking on Turner's property; the possibility of shuttle buses being used to bring wedding guests to and from the property; and delivery trucks entering and leaving.

*Id.* at 8.

The court next found that the preliminary injunction would serve to preserve the status quo between the parties and "maintain a balance between the parties' competing interests." *Id.*

The court next determined that Northgate has a clear right to relief. *Id.* The court emphasized that there is no dispute that "wedding venue" is not listed as a permissible use in Exhibit E of the Easement Agreement. *Id.* at 9.

Lastly, the court found that the preliminary injunction would serve the public interest, not only to Northgate's residents, but also to "any customers who would book weddings at Turner's property and would be subject to considerable disappointment and inconvenience in the event Northgate prevails in the [d]eclaratory [j]udgment [a]ction." *Id.* at 9-10.

Upon review, at this stage in the proceedings, we cannot say the court abused its discretion in granting the preliminary injunction. The preliminary injunction preserves the status quo that existed before the contested conduct and Northgate has a clear right to relief. Turner may use his property for any enumerated use set forth in Exhibit E of the Easement Agreement. However, he cannot use the property as a wedding venue since the plain language of the Easement Agreement prohibits the property from being used as one. While the Easement Agreement permits several commercial uses of the property, such as restaurants and country clubs, the permitted uses are limited to those enumerated in the Agreement. Further, the record supports the court's conclusion that the preliminary injunction will prevent irreparable harm to Northgate.

In his second issue, Turner argues that the preliminary injunction was a legal nullity because the trial court did not set a deadline for posting the bond and Northgate failed to timely post the bond. Turner raised this issue in the related appeal at No. 605 MDA 2025. For the reasons set forth in our memorandum at No. 605 MDA 2025, this claim is without merit.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/12/2026